**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK DAROLD BENTLEY,

       Petitioner,                          Civil No. 2:09-CV-10106
                                               HONORABLE PAUL D. BORMAN
v.                                             UNITED STATES DISTRICT JUDGE

CAROL HOWES

       Respondent,

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

      Mark Darold Bentley, ("Petitioner"), confined at the Michigan Reformatory in Ionia, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for unarmed robbery, Mich. Comp. Laws § 750.530; conspiracy to commit unarmed robbery, Mich. Comp. Laws §§ 750.157a; 750.530; unlawfully driving away an automobile, Mich. Comp. Laws § 750.413; conspiracy to unlawfully drive away an automobile, Mich. Comp. Laws §§ 750.157a; 750.413; and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

**I. BACKGROUND**

      Petitioner was convicted of the above offenses following a jury trial in the Macomb County Circuit Court.

      The victim, Saad Shinko, was introduced to petitioner's co-defendant, Julie Raymond, by an employee. (Tr. 5/4/06, pp. 21-2) On October 9, 2005, Raymond and Shinko went on a

"date." (*Id.,* pp. 22-4.)  Raymond bought some crack cocaine before returning to Shinko's car. Shinko drove Raymond to another location, where she purchased powder cocaine. (*Id.,* pp. 113-14.)  Raymond asked Shinko to drive to a liquor store.  In the store's parking lot, a man later identified by Shinko as petitioner approached the passenger side of Shinko's vehicle and began speaking with Raymond.  Raymond informed petitioner that she was out on a date with Shinko and that they were going to the Suez Hotel.   Raymond handed petitioner some of the cocaine that she had purchased, along with the remaining $20.00 that Shinko had given her. (*Id.,* pp. 26-28, 115-16.)

Shinko and Raymond drove to the Suez Hotel in Warren, Michigan. (*Id.,* p. 30.)  When Shinko and Raymond went inside of their room, they used drugs.  At some point, Raymond left the room to purchase a soda out of the pop machine.  Raymond encountered petitioner by the pop machine.  Petitioner was with another man who was wearing a hat that said "POLICE" on it. Petitioner advised Raymond that he and the other man "are going to knock on the door, open it up, we will come in and we will get you out, we will take what he's got." (*Id.,* pp. 116-18.)

Shinko testified that he and Raymond had sexual intercourse when she returned to the room.  Shinko then got up and went to use the bathroom.  From inside the bathroom, Shinko heard knocking at the door.  Raymond opened the door and petitioner and another man entered the room.  The men informed Shinko that they were from the Warren Police Department and loudly demanded Shinko to give them his money, drugs, and wallet.  Petitioner and the other man took Shinko's cash, cellular telephone, watch, and his car keys from the desk in the room. Petitioner and his associate then ordered Shinko to sit down on the toilet and not to move.  As petitioner and the other man began leaving the room, Raymond asked them "am I done here?"

2

The men answered affirmatively and she left the room with them. (*Id.,* pp. 34-41, 45, 88).

Shinko sat on the toilet for several hours, not leaving until his feet began to go numb. When he looked out the door, Shinko discovered that his car had been taken. Shinko went to the front desk of the motel and called the police. (*Id.,* pp. 39, 45.)

Shinko arrived home around 3 a.m. the next morning. About 20 minutes later, petitioner called Shinko and said "I saw somebody in your car, I'm trying to get it for you." Between 4 a.m. and 5 a.m., petitioner telephoned Shinko again. Petitioner told Shinko that "somebody tried to sell your wallet, I'm going to buy it for you, you want me to buy it?" Shinko responded affirmatively and made arrangements to meet with petitioner that morning. Shinko then called the police, who instructed him to set up a meeting with petitioner. Shinko arranged to meet petitioner at a gas station on Eight Mile Road. When Shinko arrived, petitioner was not there. Instead, a female approached Shinko and offered to exchange the wallet for money. After the exchange, the woman was arrested. The woman gave detectives a description of petitioner and Raymond. (Tr. 5/4/06, pp. 43-47, 204; Tr. 5/5/06, pp. 6-10).

When the police officers went to arrest petitioner, he fled from them. After the police caught and arrested him, petitioner stated without any questioning from the police, "I know what this is about, we did not rob the guy at the Suez Motel." Petitioner also stated: "[W]e took the guy's car because he was supposed to pay my girlfriend, Julie, for sex and drugs that we got for him." (Tr. 5/4/06 pp. 208-09; Tr. 5/5/06, 10-11).

Raymond agreed to testify against petitioner. Raymond testified that she pleaded guilty to conspiracy to commit unarmed robbery without a sentence bargain. Raymond testified that she had known petitioner for two years and that she would "turn dates for money." Petitioner

3

would take the money and give her crack cocaine.  Raymond testified that following their arrests, petitioner wrote her a letter, in which he asked Raymond to tell the police that she made her confession under duress and that she was innocent. (Tr. 5/4/06, pp. 109-10, 128-37).

Petitioner's conviction was affirmed on appeal. *People v. Bentley,* No. 272551 (Mich.Ct.App. October 11, 2007); *lv. den.* 480 Mich. 1076, 744 N.W.2d 172 (2008).

Petitioner originally filed his petition for writ of habeas corpus on January 9, 2009.  The respondent filed a motion to dismiss on the grounds that petitioner had failed to exhaust some of his claims with the state courts.  In lieu of dismissing the petition, this Court held petitioner's habeas petition in abeyance to permit petitioner to return to the state courts to exhaust additional claims that he had failed to raise in the state courts prior to filing his habeas petition.  The Court also administratively closed the case. *See Bentley v. Howes,* No. 09-CV-10106; 2009 WL 3241972 (E.D. Mich. October 8, 2009).

Petitioner filed a post-conviction motion for relief from judgment, which was denied by the trial court pursuant to M.C.R. 6.508(D)(3). *People v. Bentley,* No. 2005-4409-FH (Macomb County Circuit Court, June 24, 2010).  The Michigan appellate courts denied petitioner leave to appeal. *People v. Bentley,* No. 300012 (Mich.Ct.App. May 23, 2011); *lv. den.* 490 Mich. 969, 806 N.W.2d 330 (2011).

On February 22, 2012, this Court reinstated the habeas petition to the Court's active docket, and permitted petitioner to file an amended petition for writ of habeas corpus, in which he seeks relief on the following grounds:

I. Whether trial counsel was ineffective.

II. Whether the cumulative effect of prosecutorial misconduct denied petitioner his right to due process.

4

III. Whether the cumulative effect of other errors deprived Bentley of a fair trial.

IV. Whether the judge, prosecutor, police, and defense counsel conspired to conceal evidence that establish his actual innocence.

V. Whether the prosecutor made a false statement to conceal the whereabouts of a material witness.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal system."
*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly
deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions
be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh
v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per
curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas
relief so long as 'fairminded jurists could disagree' on the correctness of the state court's
decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*,
541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for
relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing
*Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas
court must determine what arguments or theories supported or...could have supported, the state
court's decision; and then it must ask whether it is possible fairminded jurists could disagree
that those arguments or theories are inconsistent with the holding in a prior decision" of the
Supreme Court. *Id.*

   "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,*
131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not
completely bar federal courts from relitigating claims that have previously been rejected in the
state courts, it preserves the authority for a federal court to grant habeas relief only "in cases
where there is no possibility fairminded jurists could disagree that the state court's decision
conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view
that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

## III.  DISCUSSION

### A.  The motion for sanctions.

Petitioner has filed a motion for sanctions, in which he argues that any procedural default defense that is being raised by respondent should be considered waived because respondent failed to submit the Rule 5 materials in a timely manner.  The original order of responsive pleading required respondent to file an answer and the Rule 5 materials by July 20, 2009.  Although respondent filed a motion to dismiss on that date, the Rule 5 materials were not filed until nine days later.

The Court declines to impose sanctions on respondent.  Respondent timely filed his motion to dismiss the petition for writ of habeas corpus on the grounds that the petition contained claims that had not been exhausted with the state courts.  Respondent filed the Rule 5 materials some nine days later, before respondent filed his reply to the motion to dismiss and

7

before the Court adjudicated respondent's motion.  Because respondent's delay in failing to

timely file the Rule 5 materials was only a matter of over one week, and there is no suggestion

that petitioner was harmed by it, the Court declines to impose sanctions in this case. *See e.g.*

*Bleitner v. Welborn,* 15 F. 3d 652, 653-54 (7th Cir. 1994)(where state's delay in failing to file

timely response to habeas corpus petition was only of weeks, and there was no suggestion that

petitioner was harmed by it, there was no denial of due process).  The motion for sanctions is

denied.

### B.  Claims # 1, 2, 4, and 5.  The procedurally defaulted claims.

The Court will discuss petitioner's procedurally defaulted claims first for judicial

economy and clarity.  Respondent claims that the majority of petitioner's first claim, as well as

his second, fourth, and fifth claims are procedurally defaulted for various reasons.

When the state courts clearly and expressly rely on a valid state procedural bar, federal

habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual

prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to

consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*,

501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is

unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533

(1986).  However, in an extraordinary case, where a constitutional error has probably resulted in

the conviction of one who is actually innocent, a federal court may consider the constitutional

claims presented even in the absence of a showing of cause for procedural default. *Murray v.

Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence

requires a petitioner to support the allegations of constitutional error with new reliable evidence

8

that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Respondent contends that petitioner's second claim is procedurally defaulted because petitioner failed to preserve the issue by objecting at trial.

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his prosecutorial misconduct claims. *Bentley,* No. 272551, Slip. Op. at 1-2. Petitioner's second claim is procedurally defaulted.

Petitioner claims that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct that he claims deprived him of a fair trial. Ineffective assistance of counsel may constitute cause to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The

9

likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959,

10

964 (6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial

breathing room when considering prosecutorial misconduct claims because 'constitutional line

drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.

3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas

relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's

rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S.

Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one,

leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.*

(quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

   Petitioner first claims that the prosecutor injected prejudicial bad acts evidence at trial

by referring to petitioner a number of times as a "pimp" who took advantage of his co-defendant

and mentioning that petitioner and his co-defendant used illegal drugs. The Michigan Court of

Appeals rejected petitioner's prosecutorial misconduct claim:

> This case was ensconced in drugs and prostitution. The desire to obtain money to
> make drug purchases or to obtain drugs directly was the motive for commission of
> the crime, and the entire criminal transaction itself involved the procuring of drugs,
> the use of drugs, the exchange of drugs for gasoline purchased by defendant with
> the victim's stolen credit card, and it involved an act of prostitution between the
> codefendant and the victim, which act was part of the plan or conspiracy engaged
> in by defendant.
>
> ******************************************************************
> Evidence of and references to defendant's drug use and pimping, as well as
> codefendant's drug use and prostitution, were necessary to give the jury an
> intelligible presentation of the full context in which the criminal activity took place,

or, in other words, to give the jury the complete story.  The charges included claims of a conspiracy; therefore, the nature of the relationship between defendant and codefendant, which was one mired in drugs and prostitution, was a vital component in prosecuting the case.  The crimes charged did not arise in isolation or in a vacuum but flowed from defendant's and codefendant's relationship that was predicated on drugs and prostitution.  Without explanation of this relationship, which affected issues of credibility and motivation, as well as providing the groundwork for conspiracy, the jury would be denied context and the full story.

*Bentley,* Slip. Op. at 2-3.

A prosecutor does not commit misconduct by bringing up a habeas petitioner's prior bad acts when such bad acts are relevant to the prosecutor's case. *See Cristini v. McKee,* 526 F. 3d 888, 900 (6th Cir. 2008).  In the present case, Raymond's drug use, the fact that she was a prostitute, and the fact that petitioner was her "pimp" were all a part of the *res gestae* of the offenses charged, and were thus relevant to the prosecutor's case.  Moreover, even if the prosecutor's remarks about petitioner being a "pimp" were insulting, they were not so pervasive as to deny petitioner a fair trial. *See Olsen v. McFaul,* 843 F. 2d 918, 930 (6th Cir. 1988). Petitioner has failed to show that the Michgan Court of Appeals unreasonably applied clearly established federal law in rejecting this prosecutorial misconduct claim.

Petitioner next claims that the prosecutor appealed to the jury to sympathize with Julie Raymond's life as a drug addict and prostitute and petitioner's treatment of her.  This portion of petitioner's prosecutorial misconduct claim would be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. (Tr. 5/5/06, p. 71). *See Cockream v. Jones,* 382 F. App'x. 479, 486 (6th Cir. 2010).

Petitioner next contends that the prosecutor committed misconduct by failing to produce an endorsed witness for trial, namely, Sylvia Davis.

Violations of state law and procedure which do not infringe specific federal

12

constitutional protections are not cognizable claims under Section 2254. *Estelle v. McGuire*,

502 U.S. 62, 67-68 (1991); *See also Jones v. Smith,* 244 F. Supp. 2d 801, 814 (E.D. Mich.

2003).

      Federal law does not require the production of *res gestae* witnesses. *Johnson v.*

*Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001).  Michigan law's requirement that the

prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is

beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 F. App'x. 555, 559 (6th

Cir. 2011).  "[U]nder federal law, there is no obligation on the part of the prosecutor to call any

particular witness unless the government has reason to believe that the testimony would

exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192 (Table), No. 1988 WL 87710, * 2 ( 6th

Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)).

Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness

is outside the scope of federal habeas review. *Collier,* 419 F. App'x. at 559.  Petitioner has

offered no evidence, other than speculation, that Davis would have provided exculpatory

evidence.  Petitioner is therefore not entitled to habeas relief on this portion of his claim.

      Petitioner lastly claims that the prosecutor committed misconduct by eliciting testimony

from a police officer concerning a statement that had been taken from petitioner in violation of

his right against self-incrimination.  Petitioner claims that the arresting officer failed to advise

him of his *Miranda* rights, thus, the prosecutor should not have elicited from the officer the

inculpatory statements made by petitioner at the time of his arrest.

      Although petitioner has framed his claim as a prosecutorial-misconduct challenge, "it

amounts in the end to a challenge to the trial court's decision to allow the introduction of this

13

evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009).  Moreover, the special

procedural safeguards outlined in *Miranda* are required not merely when a suspect is taken into

custody, but instead where a suspect in custody is subjected to interrogation. *Rhode Island v.*

*Innis,* 446 U.S. 291, 300 (1980).  "'Interrogation', as conceptualized in the *Miranda* opinion,

must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.*

*Miranda* warnings are required whenever a person in custody is subject either to express

questioning or its "functional equivalent." *Rhode Island v. Innis,* 446 U.S . at 300-01.  Thus, for

*Miranda* purposes, the term "interrogation" refers not only to express questioning of a suspect

by law enforcement officials, but also to "any words or actions on the part of the police (*other*

*than those normally attendant to [an] arrest or custody*) that the police should know are

reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301 (emphasis

added).

In the present case, Officer Timothy Maniere saw petitioner on the street and identified

himself as a police officer.  Petitioner began to flee.  Officer Maniere chased after petitioner,

brought him to the ground, and handcuffed him.  As petitioner was being lifted off the ground,

he made the incriminating statements to Officer Maniere without any questioning by the officer.

(Tr. 5/4/06, pp. 207-09).  Because petitioner's statements were not a response to any

interrogation by Officer Maniere, their admission presents no constitutional problem. *See*

*United States v. Prior*, 941 F. 2d 427, 430 (6th Cir. 1991).  The prosecutor thus did not commit

misconduct by eliciting this testimony.

Petitioner has failed to show that he was deprived of a fair trial because of prosecutorial

misconduct.  Because the prosecutor's questions and remarks did not deprive petitioner of a

14

fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.  Petitioner has thus failed to establish cause to excuse the default of his prosecutorial misconduct claims.  Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his second claim. *Smith*, 477 U.S. at 533.

Respondent contends that the majority of petitioner's first claim, with the exception of three subclaims which will be addressed in a separate section of this opinion, *infra,* as well as his fourth and fifth claims, are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later

15

unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Macomb County Circuit Court judge, in denying petitioner's post-conviction motion, indicated that with respect to any new claims being raised by petitioner in his post-conviction motion that had not previously been raised on his direct appeal, petitioner had "failed to show good cause as why he could not have included them in his appeal and that, but for the alleged irregularities, he would have had a reasonably likely chance of acquittal. MCR 6.508(D)(3)(a)(b)(i)." *Bentley,* No. 2005-444090-FH, Slip. Op. at 2.

Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), petitioner's post-conviction claims are clearly procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F. 3d 284, 292-93 (6th Cir. 2007); *See also Howard v. Bouchard,* 405 F. 3d 459, 477 (6th Cir. 2005).  The

16

majority of petitioner's first claim, with the exception of the three subclaims that will be addressed below, and his fourth and fifth claims, are procedurally defaulted. [1]

With respect to his post-conviction claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

---

[1] Petitioner could not have procedurally defaulted any claim which alleges the ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F. 3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on any such claim.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F. 3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that petitioner raised for the first time in his post-conviction motion for relief from judgment.  Appellate counsel filed a thirty eight page appellate brief which raised a prosecutorial misconduct claim with three subclaims, an ineffective assistance of trial counsel claim containing four subclaims, and a cumulative error claim. [2]  Petitioner has not shown that appellate counsel's strategy in presenting these claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the Assistant Michigan Attorney General in his lengthy answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners."  Because the defaulted claims are not "dead bang winners,"

---

[2]  *See* Defendant-Appellant's Brief on Appeal [this Court's Dkt. # 5-11].

18

petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano,* 228 F. 3d 674, 682-83 (6th Cir. 2000).

Moreover, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010).

In the present case, petitioner has failed to show cause to excuse his default of the claims that he raised for the first time on state post-conviction review. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider the defaulted portion of his first claim or his second, fourth, or fifth claims as a ground for a writ of habeas corpus in spite of the procedural default. To the extent that petitioner is raising a sufficiency of evidence claim [Claim # V], this would be insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his procedurally defaulted claims.

**C. Claim # 1.  The non-defaulted ineffective assistance of trial counsel claims.**

In a portion of his first claim, petitioner raises three ineffective assistance of counsel

claims that were presented on his direct appeal and rejected by the Michigan Court of Appeals.

As mentioned above, *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

However, on federal habeas review of a state court conviction, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies,

the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" seven years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first claims that his trial counsel was ineffective for failing to request an adverse inference jury instruction based upon the prosecutor's failure to produce Sylvia Davis as a witness at trial. Petitioner argues that counsel should have requested CJI 2d 5.12, which states that a jury may infer that a missing prosecution witness' testimony would have been unfavorable to the prosecution's case.

In rejecting petitioner's related prosecutorial misconduct claim, the Michigan Court of Appeals noted that the prosecutor had indicated at trial that Ms. Davis, a homeless drug addict, could not be located. Defense counsel did not request a due diligence hearing. *Bentley,* Slip. Op. at 4. The Michigan Court of Appeals, within the context of petitioner's ineffective assistance of counsel claim, subsequently concluded that "it appears that good cause existed for not producing the witness." *Id.,* Slip. Op. at 4-5, n. 2.

In the present case, petitioner has presented no evidence that the prosecutor or the police acted in bad faith in failing to produce Ms. Davis for trial or that they did not exercise due

21

diligence in attempting to locate her.  Because petitioner has failed to establish that the police acted in bad faith in failing to locate this witness or that they did not act in due diligence in attempting to find her, petitioner would not be entitled under Michigan law to an adverse inference instruction and counsel was therefore not ineffective in failing to request such an instruction from the court. *See Bailey v. Smith,* 492 F. App'x. 619, 627-28 (6ᵗʰ Cir. 2012); *cert. den.* 133 S. Ct. 580 (2012).  Moreover, in light of the convincing evidence in this case, including petitioner's own inculpatory statements, petitioner has failed to show that the outcome of the case would have been different had counsel requested an adverse inference instruction. Thus, he is not entitled to habeas relief on his ineffective assistance of counsel claim. *Id.* at 628.

Petitioner next contends that his trial counsel was ineffective for failing to obtain an expert on eyewitness identification.

As an initial matter, petitioner has presented no evidence either to the state courts or to this Court that he has an expert witness who would be willing to testify with respect to this issue.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6ᵗʰ Cir. 2006).  Petitioner has offered no evidence, either to the Michigan courts or to this Court, that an expert witness would testify or what the content of this witness' testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim.    *See Clark v. Waller,* 490 F. 3d 551, 557 (6ᵗʰ Cir. 2007).

22

Moreover, with respect to petitioner's claim that counsel was ineffective for failing to call an expert on eyewitness identification, "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x. 822, 833 (6th Cir. 2011); *See also Dorch v. Smith*, 105 F. App'x. 650, 653 (6th Cir. 2004)(upholding as reasonable the Michigan Court of Appeals's conclusion that defense counsel's failure to call an expert witness on eyewitness identification did not satisfy *Strickland*, because counsel "presented several witnesses who testified as to [the habeas petitioner's] whereabouts on the weekend of the incident" and cross-examined the eyewitness regarding inconsistencies in his identification of the petitioner).

In the present case, the co-defendant knew petitioner. Petitioner also admitted to the police that he had taken the victim's car. In light of this evidence, petitioner has failed to show that counsel was deficient for failing to obtain an expert in identification or that such an expert would have benefited petitioner.

As a related claim, petitioner argues that his trial counsel was ineffective for failing to request a cautionary instruction on the "grave dangers" of misidentification. As the Michigan Court of Appeals indicated in rejecting petitioner's claim, *Bentley,* Slip. Op. at 5, the jury was instructed on CJI 2d 3.6, the instruction on witness credibility. The instruction addresses factors for a jury to consider in determining the credibility of a witness, including such factors as "Was the witness able to see or hear clearly? How long was the witness watching or listening? Was anything else going on that might have distracted the witness? Did the witness seem to have a good memory?" (Tr. 5/5/06, p. 75). Because the witness credibility instruction

23

adequately covered the same issues that a cautionary instruction on the dangers of misidentification would have, the Michigan Court of Appeals' determination that counsel was not ineffective for failing to request a cautionary instruction on the dangers of misidentification was not unreasonable. *See Burger v. Prelesnik*, 826 F. Supp. 2d 997, 1014 (E.D. Mich. 2011). Moreover, in light of the fact that Raymond knew petitioner and petitioner admitted his involvement in the crime, petitioner was not prejudiced by counsel's failure to request such an instruction. Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

### D.  Claim # 3.  The cumulative errors claim.

Petitioner lastly contends that he is entitled to habeas relief because of cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005).  Therefore, petitioner is not entitled to habeas relief on the grounds of cumulative error. *Id.*

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists

24

would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d at 885. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** the motion for sanctions. The Court further **DENIES** a

certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

                              s/Paul D. Borman
                              PAUL D. BORMAN
                              UNITED STATES DISTRICT COURT
DATED:  May 20, 2013


### PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 20, 2013.

                              s/Deborah R. Tofil
                              Deborah R. Tofil

26